UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| JESSICA REYNOLDS-TAYLOR,  )<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>MARTIN O'MALLEY,  )<br>Commissioner of Social Security,[1]  )<br>)<br>Defendant.  ) | No.  2:23 CV 47 CDP |

# **MEMORANDUM AND ORDER**

Plaintiff Jessica Reynolds-Taylor brings this action under 42 U.S.C. § 405 seeking judicial review of the Commissioner's final decision denying, in part, her claim for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*  Because the Commissioner's final decision is supported by substantial evidence on the record as a whole, I must affirm the decision.

## **Procedural History**

Plaintiff applied for DIB in December 2020, asserting that she became disabled on August 16, 2018, because of stage 4 cirrhosis of the liver, severe post-

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Fed. R. Civ. P. 25(d), he is automatically substituted for former Acting Commissioner Kilolo Kijakazi as the defendant in this action.

traumatic stress disorder (PTSD), high blood pressure, depression and anxiety, and type 2 diabetes.  Plaintiff later amended her alleged onset date to March 15, 2020.  The Social Security Administration (SSA) denied plaintiff's application initially in May 2021, and on reconsideration in October 2021.  On July 26, 2022, a hearing was held before an administrative law judge (ALJ) at which plaintiff and a vocational expert (VE) testified.  On September 21, 2022, the ALJ entered a decision finding that plaintiff was under a disability beginning November 15, 2021, but not before that date.  On June 16, 2023, the Appeals Council denied plaintiff's request to review the ALJ's decision.  The ALJ's decision is thus the final decision of the Commissioner.

In this action for judicial review, plaintiff contends that the ALJ's determination of her residual functional capacity (RFC) for the period before November 15, 2021, is not supported by substantial evidence on the record as a whole, because the record shows her impairments caused limitations that prevented her from performing work-related functions during that time.  Plaintiff asks that I reverse the ALJ's decision and award benefits or remand for further consideration.

## Medical Records and Other Evidence of Record

Plaintiff was diagnosed with uterine cancer in August 2018 for which she underwent a total hysterectomy with follow-up chemotherapy and radiation treatment.  She finished her treatment in March 2019 and has been considered in

remission since May 2020.  An abdominal ultrasound taken in October 2020 in response to lab tests that indicated elevated liver enzymes showed enlarged fatty liver with probable cirrhosis without ascites.  Plaintiff was not a candidate for liver transplant, however, because of her severe obesity; and she could not undergo bariatric surgery because of her liver condition.  Plaintiff also has type 2 diabetes mellitus, having had the condition since 2013.  She became insulin dependent during the course of her chemotherapy treatment.  Plaintiff has also suffered from anxiety and depression since at least 2018 and was diagnosed with recurrent major depressive disorder and PTSD.[2]

A liver biopsy from November 15, 2021, confirmed NASH (nonalcoholic steatohepatitis) cirrhosis, with clinically significant portal hypertension as shown by an "extremely high" hepatic venous pressure gradient.  An MRI of the abdomen performed in March 2022 showed a trace amount of ascites.  Upon consideration of those test results and plaintiff's increasing cirrhotic symptoms and weight gain, plaintiff's treating gastroenterologist suspected in July 2022 that plaintiff currently had medium sized esophageal varices,[3] at the least, and decompensated cirrhosis.

---

[2] Plaintiff has several stressors in her life, including her health conditions; raising five young daughters, one of whom is in a care facility; managing her daughters' mental health conditions, caused in part by sexual abuse committed by her now ex-husband; and going through the trial and other matters related to her ex-husband's crimes.

[3] Esophageal varices are enlarged veins in the esophagus.  They can leak blood or burst. *Esophageal varices*, Mayo Clinic, *available at* https://www.mayoclinic.org/diseases-conditions/esophageal-varices/symptoms-causes/syc-20351538# (Mar. 15, 2023).

(Tr. 1345-47.)[4]

With respect to additional medical records and other evidence of record, I adopt plaintiff's recitation of facts set forth in her Statement of Uncontroverted Medical Facts (ECF 15-1) as admitted and clarified by the Commissioner (ECF 16-1). These statements and clarifications provide a fair and accurate description of the relevant record before the Court. Additional specific facts are discussed as needed to address the parties' arguments.

## Discussion

A.   Legal Standard

To be eligible for benefits under the Social Security Act, plaintiff must prove that she is disabled. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992).

The Social Security Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). An individual will be declared disabled "only if [her]

---

[4] Health experts classify cirrhosis as either compensated or decompensated. Decompensated cirrhosis is when liver function decreases and a person may be approaching end stage liver failure. *What to Know About Decompensated Cirrhosis*, MEDICALNEWSTODAY, https://www.medicalnewstoday.com/articles/decompensated-cirrhosis (May 24, 2023).

- 4 -

physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner engages in a five-step evaluation process to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The first three steps involve a determination as to whether the claimant is currently engaged in substantial gainful activity; whether she has a severe impairment; and whether her severe impairment(s) meets or medically equals the severity of a listed impairment. At Step 4 of the process, the ALJ must assess the claimant's RFC – that is, the most the claimant is able to do despite her physical and mental limitations, *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) – and determine whether the claimant is able to perform her past relevant work. *Goff v. Barnhart,* 421 F.3d 785, 790 (8th Cir. 2005) (RFC assessment occurs at fourth step of process). If the claimant is unable to perform her past work, the Commissioner continues to Step 5 and determines whether the claimant can perform other work as it exists in significant numbers in the national economy. If so, the claimant is found not to be disabled, and disability benefits are denied.

The claimant bears the burden through Step 4 of the analysis. If she meets

this burden and shows that she is unable to perform her past relevant work, the burden shifts to the Commissioner at Step 5 to produce evidence demonstrating that the claimant has the RFC to perform other jobs in the national economy that exist in significant numbers and are consistent with her impairments and vocational factors such as age, education, and work experience. *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012). If the claimant has nonexertional limitations, the Commissioner may satisfy his burden at Step 5 through the testimony of a vocational expert. *King v. Astrue*, 564 F.3d 978, 980 (8th Cir. 2009).

I must affirm the Commissioner's decision if it is not based on legal error and there is substantial evidence on the record as a whole supporting the conclusion. *Wildman v. Astrue*, 596 F.3d 959, 963 (8th Cir. 2010). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010). Determining whether there is substantial evidence requires scrutinizing analysis. *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).

I must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, I must affirm the Commissioner's decision. *Anderson v. Astrue*, 696

F.3d 790, 793 (8th Cir. 2012). I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *McNamara*, 590 F.3d at 610.

B.   The ALJ's Decision

The ALJ determined that plaintiff met the insured status requirements through December 31, 2024, and had not engaged in substantial gainful activity since March 15, 2020, the amended alleged onset date of disability. The ALJ found that plaintiff's liver cirrhosis secondary to NASH, mild cervical degenerative disc disease, mild left shoulder degenerative joint disease, uterine cancer with extensive chemotherapy in remission, type 2 diabetes, morbid obesity, major depressive disorder, and PTSD were severe impairments, but that they did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 17.)[5]

The ALJ found that, before November 15, 2021, plaintiff had the RFC to perform light work but with several non-exertional limitations:

> [S]he could never climb ladders, ropes, or scaffolds, but could occasionally climb ramps and stairs, balance (using the definition in the Dictionary of Occupational Titles and Selected Characteristics of Occupations and not the common definition), stoop, kneel, crouch,

---

[5] The ALJ also determined that plaintiff's history of Covid-19 infection, hypertension, mild intermitted asthma, hyperlipidemia, hypothyroidism, vitamin D deficiency, gout, reflux esophagitis, gastritis, internal hemorrhoids, folliculitis, cherry angiomas, gallstones, astigmatism, presbyopia, sleep apnea, restless leg syndrome, ankle sprain, polycystic ovarian syndrome, allergic rhinitis, and Lynch syndrome were not severe impairments. (Tr. 17.) Plaintiff does not appear to challenge that determination.

and crawl.  She needed to avoid concentrated exposure to pulmonary irritants such as gas, fumes, odors, dust, and workspace with poor ventilation and work hazards such as unprotected heights and being around dangerous moving machinery.  She was able to understand, remember, and carry out simple instructions consistent with unskilled work, but could perform only simple decision-making related to basic work functions and tolerate only minor, infrequent changes within the workplace.  She could tolerate occasional interaction with co-workers and supervisors, but needed to avoid interaction with the general public including incidental contact.

(Tr. 19-20.)  The ALJ determined that plaintiff's RFC precluded her from performing her past relevant work as a speech pathologist and director of rehabilitation.  (Tr. 26.)  Given plaintiff's RFC, however, as well as her age, education, and work experience, the ALJ found that VE testimony supported a conclusion that plaintiff could perform work as it existed in significant numbers in the national economy, and specifically as a laundry folder, office helper, and document preparer.  (Tr. 27-28.)   The ALJ thus found that plaintiff was not under a disability before November 15, 2021.  (Tr. 28.)

For the period beginning November 15, 2021, the ALJ determined that plaintiff had the same RFC as set out above but that "significant difficulties with increased fatigue, nausea, neuropathy, diabetic A1C levels, and depression despite treatment" caused her to have the following additional limitations:  being limited to sedentary work instead of light work, requiring additional breaks of at least 15 minutes in addition to normal breaks on a daily basis, and being absent from work at least twice a month on a regular and consistent basis.  (Tr. 24, 25.)  Upon

consideration of those additional limitations and plaintiff's vocational factors, the ALJ concluded that there were no jobs that existed in significant numbers in the national economy that plaintiff could perform. The ALJ thus found that plaintiff was under a disability beginning November 15, 2021. (Tr. 28.)

C.     RFC Determination

Plaintiff challenges the ALJ's RFC determination for the period before November 15, 2021, arguing that the ALJ failed to address several limiting conditions and symptoms that she experienced during that period.

A claimant's RFC is the most she can do despite her physical or mental limitations. *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). The ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of her symptoms and limitations. *Goff*, 421 F.3d at 793; *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 404.1545(a). In addition, because a claimant's RFC is a medical question, "the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace." *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001). Some medical evidence must support the ALJ's RFC determination. *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010); *Hutsell*, 259 F.3d at 711-12. The burden to prove the claimant's RFC

rests with the claimant, however, and not the Commissioner. *Pearsall*, 274 F.3d at 1217.

Plaintiff claims that the ALJ failed to consider the following symptoms and conditions in determining her pre-November 2021 RFC: ongoing depression and anxiety, pain and weakness in the left shoulder and hand, uncontrolled blood sugar levels, neuropathy, extreme fatigue, episodes of falling, vision problems, and chronic nausea and vomiting with abdominal bloating. A review of the ALJ's decision belies plaintiff's contention. Upon consideration of those conditions and more, the ALJ determined that they did not impose disabling limitations before November 15, 2021. (Tr. 21-24.) Because that decision is supported by substantial evidence on the record as a whole, I must affirm.

First, the ALJ noted that, during the relevant period – that is, before November 15, 2021 – plaintiff's mental impairments improved with treatment and that plaintiff herself reported on several occasions that she was doing well mentally and had increased her activity. Mental status examinations at nearly every health care appointment were within normal limits, and she often reported that she was handling her stressors well. To the extent plaintiff occasionally experienced exacerbations in symptoms, her treating psychiatrist noted they were related to outside stressors, and the symptoms improved with adjustments in medication. The ALJ also noted that both plaintiff and her mother reported that she engaged in

daily activities that were not indicative of a disabling mental impairment, such as caring for her children, managing personal care, socializing with family several times a month, going out to eat, attending small group church services, attending her children's sporting events several times a month, and getting along with others.

As to pain in plaintiff's left shoulder and hand, the ALJ noted that imaging of the shoulder in 2019 (before the amended alleged onset date) showed mild joint disease and that physical examinations during the relevant period consistently showed full range of motion of all extremities and full grip strength. *See Steed v. Astrue*, 524 F.3d 872, 875 (8th Cir. 2008) (diagnosis tempered by the words "mild" or "minimal"). As to plaintiff's claims of neuropathy, the ALJ noted and the record shows that ongoing issues with the impairment did not occur until after November 15, 2021. Indeed, plaintiff did not complain of neuropathic symptoms before November 15, 2021, and physical examinations during that period consistently showed no swelling, numbness, tingling, or weakness. Examinations also showed that plaintiff had normal coordination, normal gait and station, and no neurological deficits. To the extent plaintiff claims that she has experienced neuropathic symptoms since chemotherapy, the record shows that other than a complaint of hand pain in September and October 2019, plaintiff made no other complaints of neuropathic-type symptoms until November 2021.

Nor did plaintiff's uncontrolled diabetes manifest in disabling limitations

during the relevant period. As noted by the ALJ, adjustments to plaintiff's medications helped the condition by lowering A1C levels, and physical examinations showed no diabetes-related conditions such as edema, numbness, or foot issues. In January 2021, plaintiff's treating physician noted that plaintiff was doing well overall on her medications and had only intermittent elevated blood sugar levels. (Tr. 682.)[6] Plaintiff's chronic nausea was thought to be related to either her diabetes or an out-of-place lap band, but, as noted by the ALJ, plaintiff reported during the relevant period that medication sufficiently controlled the nausea. (*See* Tr. 681, 714.) Although the nausea appeared to worsen beginning in May 2021 (*see* Tr. 892, 1036), plaintiff did not report it as being bothersome until November 2021 (Tr. 1287). Finally, although the ALJ did not specifically address plaintiff's report of vision problems, the record shows that plaintiff's diabetic retinopathy was considered "mild" in September 2020. (Tr. 543.) *See Steed*, 524 F.3d at 875. In March 2021, plaintiff had no complaints regarding her vision (Tr. 655), and she reported in her Adult Function Report that she wore glasses but did not have any problems seeing (*see* Tr. 262-63).

The ALJ also addressed plaintiff's complaints of chronic fatigue, noting that plaintiff consistently did not exhibit such fatigue at her examinations during the relevant period and, moreover, that her daily activities showed her able to care for

---

[6] In October 2020, plaintiff reported to her treating physician that she frequently missed doses of her diabetes medications. (Tr. 727-28.)

- 12 -

her five children, perform weekly household chores, manage finances, attend church and sporting events, go out to eat, drive, and go out alone. The ALJ also noted plaintiff's reported falls, but she observed that plaintiff sought treatment after a fall on only one occasion and that physical examinations consistently showed normal coordination, normal gait and station, and no neurological deficits. The record also shows that diagnostic testing performed to evaluate plaintiff's reports of falls yielded negative results. (Tr. 631, 862.) Finally, the ALJ noted that only conservative instruction was given regarding the falls – namely, to take time with movements and climbing stairs. (*See* Tr. 866.)

To the extent plaintiff challenges the treatment the ALJ gave to the opinions of her treating physicians (*see* ECF 15, Pltf.'s Brief at p. 8), the ALJ properly evaluated the supportability of the opinions and their consistency with the other evidence of record. *See* 20 C.F.R. § 404.1520c(b)(2). As to plaintiff's family practitioner, Dr. Freidel, the ALJ properly noted that her July 2022 opinion that plaintiff cannot work because of the effects of her fatigue, nausea, pain, cirrhosis, diabetes, and headaches was inconsistent with her own treatment notes from the relevant period, and that she did not provide objective medical findings to support her opinion. (Tr. 26.) *See Davidson v. Astrue*, 578 F.3d 838, 843 (8th Cir. 2009) (permissible for ALJ to discount opinion of treating physician that is inconsistent with the physician's clinical treatment notes). Notably, the ALJ found Dr.

- 13 -

Freidel's opinion persuasive to the extent it was consistent with plaintiff's limitations documented after November 15, 2021. (*See* Tr. 26.) As to plaintiff's oncologist, Dr. Iliff, the ALJ properly noted that his July 2022 opinion regarding the residual effects of plaintiff's cancer treatment – namely, hand neuropathy, fatigue, brain fog, swelling, and the need to elevate her feet – was inconsistent with and not supported by his treatment notes and other record evidence from the relevant period, which showed that plaintiff was doing well, had no hand complaints, and had examinations showing that she was alert and awake and oriented, had intact cognition and memory, and no edema. (Tr. 26.) *See Davidson*, 578 F.3d at 843; *see also Goff*, 421 F.3d at 790-91 (inconsistency with other evidence alone is sufficient to discount the opinion of a medical source). Finally, the ALJ did not err in failing to consider the physicians' opinions that plaintiff was disabled and unable to work. *See Renstrom v. Astrue*, 680 F.3d 1057, 1065 (8th Cir. 2012) (doctor's finding that claimant was "totally disabled" "invades the province of the Commissioner to make the ultimate disability determination.").

Accordingly, contrary to plaintiff's assertion, the ALJ properly considered her claimed impairments and their limitations on her ability to perform work-related functions during the relevant period as well as her doctors' opinions thereof. To the extent there is conflicting evidence in the record concerning the extent of plaintiff's claimed limitations, it is the ALJ's function to weigh and

resolve conflicts in the evidence of record, including medical evidence. *Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007) (citing *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002)). The ALJ did so here, and her determination is supported by substantial evidence on the record as a whole.

The record also supports the ALJ's finding that plaintiff's claimed symptoms and related limitations significantly worsened beginning November 15, 2021. Beginning in November 2021, plaintiff reported experiencing cold, painful hands and bone pain in her forearms and legs. She reported that the pain kept her awake at night. (Tr. 1266.) Noting continued complaints of hand pain in February 2022, her physician opined that the pain was likely diabetic neuropathy. Notably, plaintiff's blood sugar levels had worsened despite plaintiff's compliance with her medications. (Tr. 1298.) In May 2022, plaintiff began experiencing muscle weakness and weakness in her extremities. Swelling was noted about her feet and ankles. Continued neuropathy in her hands and feet was noted. (Tr. 1330, 1334.) Also beginning in November 2021, plaintiff's nausea became "incredibly bothersome," and she reported that she was "desperate" for relief. (Tr. 1287.) Finally, after the November 15 liver biopsy confirmed NASH and significant portal hypertension, plaintiff's anxiety and depression worsened despite treatment. Plaintiff displayed tearfulness, hopelessness, irritability, and anxiety. She had decreased energy and increased fatigue. She experienced panic attacks and was

afraid to leave her home.  (*E.g.*, Tr. 1298, 1330, 1355, 1360, 1363.)

Accounting for plaintiff's worsening symptoms, the ALJ found that after November 15, 2021, plaintiff was limited to sedentary work and was further limited to "additional breaks of at least 15 minutes daily in addition to normal breaks and work absences at least twice a month on a regular and consistent basis." (Tr. 26.)  With those additional limitations, the ALJ concluded that there were no jobs that plaintiff could perform in the national economy and that she was therefore disabled as of that date.  (Tr. 28.)

The ALJ thoroughly discussed the medical evidence of record, including the diagnostic and clinical examinations relating to plaintiff's severe impairments and their effect on her ability to function.  As set out above, the ALJ specifically discussed medical evidence relating to plaintiff's multiple impairments that she claimed limited her ability to perform work-related functions during the period before November 15, 2021.  The ALJ also discussed the nonmedical evidence of record, including plaintiff's testimony and her self-reports of functioning, as well as her mother's observations of her functional abilities.  The ALJ further noted plaintiff's daily activities and analyzed the consistency of her subjective complaints with other evidence of record.

Upon conclusion of her discussion of specific medical facts, nonmedical evidence, and the consistency of such evidence when viewed in light of the record

as a whole, the ALJ assessed plaintiff's RFC based on the relevant, credible evidence and set out plaintiff's limitations and their effect on her ability to perform work-related activities before November 15, 2021.  *See* Social Security Ruling 96-8p, 1996 WL 374184 (Soc. Sec. Admin. July 2, 1996).  This RFC is supported by substantial evidence on the record as a whole, including medical evidence.  I therefore cannot accept plaintiff's argument that the ALJ failed to address evidence relevant to her limitations that existed before November 15, 2021.

To the extent plaintiff argues that the ALJ failed to include all of her limitations in the relevant RFC, a review of that RFC and the ALJ's reasoning therefor belies this assertion.  In her decision, the ALJ specifically addressed plaintiff's claimed symptoms and impairments and accounted for them in plaintiff's pre-November 2021 RFC:

> Prior to the established onset date, I accounted for the claimant's pain, decreased mobility, and reported fatigue and gastrointestinal symptoms from liver cirrhosis secondary to NASH, mild cervical degenerative disease, mild left shoulder degenerative joint disease, history of uterine cancer in remission, type 2 diabetes, and morbid obesity by limiting the claimant to light work with [] postural restrictions[.]  Due to cirrhosis and morbid obesity, she needed to avoid concentrated exposure to pulmonary irritants and work hazards as described.  Because of moderate limits in understanding, remembering, and applying information and concentrating, persisting, or maintaining pace from depression and PTSD, she was limited to simple instructions consistent with unskilled work and simple decision-making related to basic work functions.  Because of moderate restrictions in adapting/managing herself, she could tolerate only minor, infrequent changes within the workplace.  Due to moderate difficulties in interacting with others, she could occasionally

interact with coworkers and supervisors, but needed to avoid public interaction including incidental contact.

(Tr. 23.)

The ALJ properly established plaintiff's RFC based upon all the record evidence in this case, including medical and testimonial evidence. Because the record contains some medical evidence that supports the RFC and substantial evidence on the record as a whole supports the determination, the ALJ did not err. *Baldwin v. Barnhart*, 349 F.3d 549, 558 (8th Cir. 2003); *Dykes v. Apfel*, 223 F.3d 865, 866–67 (8th Cir. 2000) (per curiam).

## Conclusion

When reviewing an adverse decision by the Commissioner, the Court's task is to determine whether the decision is supported by substantial evidence on the record as a whole. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001). "Substantial evidence is defined to include such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion." *Id.* Where substantial evidence supports the Commissioner's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently. *Id.*; *see also Buckner v. Astrue,* 646 F.3d 549, 556 (8th Cir. 2011); *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001).

For the reasons set out above, a reasonable mind can find the evidence of

record sufficient to support the ALJ's determination that plaintiff was not disabled before November 15, 2021. Because substantial evidence on the record as a whole supports the ALJ's decision, it must be affirmed. *Davis,* 239 F.3d at 966. I may not reverse the decision merely because substantial evidence exists that may support a contrary outcome.

Accordingly,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**, and plaintiff Jessica Reynolds-Taylor's complaint is **DISMISSED** with prejudice.

A separate Judgment is entered herewith.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 29th day of August, 2024.